**IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| **TAWANA HARRIS**<br>**3373 Vineland Place**<br>**Dumfries, VA 22026**<br><br><br>*Plaintiff,*<br><br>**v.**<br><br>**JAY CLAYTON, CHAIR**<br>**U.S. SECURITIES AND EXCHANGE**<br>**COMMISSION**<br>**100 F Street, NE**<br>**Washington, DC 20549**<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>) **Case No.: 1:18-cv-1840**<br>)<br>)<br>)<br>) **Jury Trial Demand**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Tawana Harris, by and through counsel, hereby files this Complaint for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a., against Defendant Jay Clayton, Chair, U.S. Securities and Exchange Commission.

## Jurisdiction and Venue

1.     This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, 42 U.S. C. § 2000e *et seq.,* and 29 U.S.C. § 633a.

2.     Plaintiff has exhausted all administrative remedies prior to filing suit.

3.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant may be found in this judicial district.

1

**Parties**

4.     Plaintiff Tawana Harris (hereinafter "Plaintiff" or "Harris") is an African American female, YOB 1974, and was employed as the Branch Chief I the Office of Support Operations ("OSO") at the time of the events giving rise to this Complaint.

5.     Defendant Jay Clayton (hereinafter "Defendant" or the "Agency") is the Chair of the U.S. Securities and Exchange Commission, an administrative agency of the United States government and an "employer" within the meaning of the statutes under which Plaintiff brings her claims.

**Factual Allegations**

6.     Plaintiff Harris was hired at the SEC as a Branch Chief and Supervisory Security Specialist for the Continuity of Operations and Policy ("COOP") in 2014. Ms. Harris was responsible for preparing the Agency to respond in time of emergencies and crises. She received an exceeds expectations performance review for FY 2016, the first year she received an evaluation.

7.     Plaintiff Harris was initially supervised by Kelly Gibbs, a Caucasian female and the OSO Assistant Director, and she supervised Robert Achoe, an African-American male, and Vince Holland, a Caucasian male. Mr. Holland was previously a branch chief but was demoted after an incident in which he lost his temper. In 2015, Ms. Harris' second level supervisor was Olivier Girod, OSO Deputy Director.

8.     In September 2015, during an emergency, where a SEC was shot, Mr. Girod appeared on the scene and ordered Plaintiff Harris to stand against a wall, in the presence of line employees, and then asked a non-security male employee to assist in responding to the emergency. Shortly after this incident, Mr. Girod began the practice of bypassing

Ms. Harris and communicating directly with her direct reports, and interfering with her projects and excluding him from projects assigned to her.

9.      In early 2016, Ms. Harris had a discussion with Mr. Achoe in his office with an open door. Mr. Achoe was speaking to another SEC employee and was using the speaker phone. Ms. Harris heard the other employee provide false information to Ms. Achoe and she asked him to place the call on hold and after the call was placed on hold, she informed Mr. Achoe that he was not being given correct information. After the call Ms. Harris had a conversation with Mr. Achoe and he became upset, and stated to her, "Tawana, I am not your child." Another employee in the office reported that Ms. Harris and Mr. Achoe caused a disturbance in the office. Based on this incident, the Agency initiated an investigation of Mr. Achoe.

10.     In April 2016, Mr. Girod falsely accused Ms. Harris of failing to perform her duties. Ms. Harris requested additional staffing for her branch, but in July 2016, Mr. Girod denied Ms. Harris' request for additional staffing for her branch, but authorized additional staff for other branches within OSO.

11.     In October 2016, Ms. Harris proposed the same performance appraisal for both of her direct reports, Mr. Achoe and Mr. Holland, but Ms. Gibbs demanded that Ms. Harris lower the performance appraisal of Mr. Achoe while not lowering Mr. Holland's appraisal. Ms. Harris initially refused because she believed it was discriminatory based on Mr. Achoe's race, but Mr. Girod and Ms. Gibbs forced Ms. Harris to unjustly lower the rating of the African American employee.

13.     Ms. Harris filed an EEO complaint and alleged discrimination based on being investigated for causing a disturbance in the office and being pressured to lower Mr.

Achoe's evaluation, and named Ms. Gibbs and Olivier Girod, Deputy Director of the Office of Security Services ("OSO"), in her EEO Complaint.

14.     Beginning in November 2016, Mr. Girod and Ms. Gibbs excluded Ms. Harris from key agency meetings and discussions involving and impacting her branch.

15.     In December 2016, Ms. Harris was immediately removed from her supervisory position and placed on a detail reporting to Mr. Girod, based on allegations of misconduct, without being given an opportunity to respond to the accusations which were completely false. Mr. Girod later claimed that Brian Williams, a Caucasian male who reported to Ms. Harris but had only been employed by the Agency for six months, reported that Ms. Harris belittled him, made disparaging comments about management including calling Kelly Gibbs a "bitch" in a staff meeting, and disclosed personnel information about an employee. Mr. Girod involuntarily detailed Appellant Harris into a non-supervisory position under his direct supervision and prohibited her from contacting her coworkers at COOP. Ms. Harris was on the detail from December 2016 until June 2017.

15.     On January 12, 2017, Oliver Girod, OSO Deputy Director, and Kelly Gibbs, OSO Assistant Director, lowered the rating of Complainant's 2016 performance appraisal. On February 13, 2017, an attorney in the Office of Human Resources informed Ms. Harris that she was being placed on an involuntary detail regarding accusation that could lead to her termination, and she must agree to an immediate interview or she could be terminated.

16.     In March 2017, Ms. Harris was issued a mid-year evaluation by Mr. Girod, which indicated that she was meeting the expectations of her position.

17.     On May 16, 2017, Mr. Girod issued Ms. Harris a written counseling memorandum that relied upon information that he previously agreed to expunge from her record.

18.     Ms. Harris returned to her Branch Chief and Supervisory Security Specialist position on June 26, 2017, under the direct supervision of Aimee Primeaux, the Assistant Director of BMO, with Barry Walters, Director of the Office of Security Services ("OSO"), as her second-line supervisor. When she returned to her position, her branch was realigned, with her management of the SCIF duties removed, and personnel was removed from her supervision.

19.     In June 2017, during the introduction meeting between Ms. Primeaux and Ms. Harris, Ms. Primeaux verbally reprimanded Ms. Harris about an email Ms. Harris sent to Ms. Primeaux prior to the meeting, accusing Ms. Harris of "documenting" her, and questioned why Ms. Harris needed to know what meetings Ms. Harris' subordinates attended and the details of their work assignments. In July 017, Ms. Primeaux informed Ms. Harris that Mr. Girod wanted Ms. Primeaux to lead the cyber security exercise for the Chairman and they did not want Ms. Harris involved.

20.     Later in July 2017, after an incident involving potential release of classified information, Ms. Primeaux pressured Ms. Harris about providing the classified information to her instead of having the incident investigated by Ms. Gibbs per security rules;

21.     Ms. Primeaux was aware of Appellant Harris' prior EEO complaint since September 2017. When Ms. Primeaux became her supervisor, she did not conduct an initial planning meeting with Appellant Harris or issue her an interim performance review

as required by Section 6.9 and 6.10 of the Agency's Performance Management Plan ("PMP"). Ms. Primeaux did not provide such a meeting even after Appellant Harris repeatedly requested historical information from Ms. Primeaux so Appellant Harris could be up-to-date at COOP after her involuntary detail.

22.     As soon as Ms. Harris began reporting to Ms. Primeaux in June 2017, Ms. Primeaux subjected her to a hostile work environment by belittling and bullying Ms. Harris whenever her opinion differed from Ms. Primeaux's. Further, Ms. Primeaux interfered with Ms. Harris' ability to oversee her subordinates by assigning them tasks and prohibiting Ms. Harris from requesting to know her subordinates' assignments. Ms. Primeaux had several disagreements with Ms. Harris' subordinates and Ms Harris had to minimize the ill-will Ms. Primeaux created. Ms. Harris received similar complaints of hostile environment from her subordinates.

23.     Beginning in July 2017, Ms. Harris reported to Ms. Primeaux and Mr. Walters her concerns of understaffing, which made it difficult to meet all policy requirements of the COOP program. Instead of providing more resources, Ms. Primeaux removed Ms. Harris' subordinate LeRoy Woodall from her supervision, in August 2017, falsely claiming that Mr. Woodall was being underutilized, and removed an administrative support staff contractor. Ms. Harris reported this and other harassing acts to Mr. Walters in August 2017. Ms. Harris also learned that Ms. Primeaux excluded her from contractor personnel meetings, which allocated additional contractors to other branches but not her branch. The Agency has been aware that COOP was understaffed since 2013 based on a Booz Allen & Hamilton audit. However, Ms. Primeaux removed two full-time federal employees after June 2017.

24.     In September 2017, Ms. Harris requested a meeting to address her concerns with Ken Johnson, Chief Operating Officer/Continuity Coordinator. Mr. Walters was also present. During this meeting Mr. Walters stated that Ms. Harris was doing a good job and had made great improvements with the program. They also discussed her harassment by Ms. Primeaux and the removal of personnel support and resources for the branch. Mr. Johnson referred Ms. Harris back to Mr. Walters and Ms. Primeaux to address her concerns and failed to respond to her follow-up request.

25.     In September 2017, Ms. Harris was on approved sick leave when a hurricane approached the U.S. mainland. When she requested sick leave, the national hurricane tracking system had not determined that the hurricane would hit Miami. Under normal circumstances, the regional offices nearest the Federal Executive Board and the Chief Operating Officer at headquarters managed past hurricanes, and not the COOP Branch in Washington, D.C. Ms. Harris was later placed on a performance improvement plan ("PIP"), in part, after being blamed for not being prepared for the hurricane.

26.     On October 2, 2017, Ms. Harris was placed on a PIP for ninety days, and proposed for removal at the end of the PIP, and terminated from employment on February 21, 2018.

### Count I
### Violation of Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. § 2000e *et seq.*
### *Race and Sex Discrimination*

27.     Plaintiff incorporates by reference paragraphs 1 through 26 as if fully stated herein.

28.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or

otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race and sex.

29.     At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

30.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

31.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant knowingly and intentionally subjected Plaintiff to disparate treatment and created a hostile work environment based on her race and sex by: 1) removing Plaintiff Harris from her supervisory position and detailing her to a non-supervisory position in December 2016 based on false accusations of misconduct; 2) issuing her a lowered performance rating in January 2017; 3) issuing her a written counseling memorandum in May 2017; 4) removing Plaintiff Harris as the Contracting Officer Representative on the JBR COOP Admin contract in July 2017; 5) realigning Plaintiff Harris' branch in June 2017 and removing her SCIF duties and removing personnel from her supervision and directing her staff to report to another branch; and 6) subjecting Plaintiff to workplace harassment as detailed above.

32.     As a result of such acts, Plaintiff has suffered damages.

## Count II
### Violation of Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. § 2000e *et seq.*
### *Retaliation*

33.     Plaintiff incorporates by reference paragraphs 1 through 32 as if fully stated herein.

34.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because such individual filed a complaint of discrimination.

35.     At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

36.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

37.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant knowingly and intentionally subjected Plaintiff to retaliation and a retaliatory hostile work environment after she complained about discrimination by: 1) removing Plaintiff Harris from her supervisory position and detailing her to a non-supervisory position in December 2016 based on false accusations of misconduct; 2) issuing her a lowered performance rating in January 2017; 3) issuing her a written counseling memorandum in May 2017; 4) removing Plaintiff Harris as the Contracting Officer Representative on the JBR COOP Admin contract in July 2017; 5) realigning Plaintiff Harris' branch in June 2017 and removing her SCIF duties and removing personnel from her supervision and directing her staff to report to another branch; and 6) subjecting Plaintiff to workplace harassment as detailed above.

### Count III
### Violation of the Age Discrimination in Employment Act
### 29 U.S.C. § 633a
### *Age Discrimination*

38.     Plaintiff incorporates by reference paragraphs 1 through 37 as if fully stated herein.

39.     The Age Discrimination in Employment Act, 29 U.S.C. § 633a, provides that, in executive agencies of the United States, all personnel actions affecting employees or applicants for employment who are at least 40 years of age shall be free from discrimination based on age.

40.     At all pertinent times, the Defendant was an employer subject to provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

41.     At all pertinent times, Plaintiff was an employee entitled to protection under the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

42.     In violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a, Defendant knowingly and intentionally subjected Plaintiff to discrimination and created a hostile work environment based on her age by: 1) removing Plaintiff Harris from her supervisory position and detailing her to a non-supervisory position in December 2016 based on false accusations of misconduct; 2) issuing her a lowered performance rating in January 2017; 3) issuing her a written counseling memorandum in May 2017; 4) removing Plaintiff Harris as the Contracting Officer Representative on the JBR COOP Admin contract in July 2017; 5) realigning Plaintiff Harris' branch in June 2017 and removing her SCIF duties and removing personnel from her supervision and directing her staff to report to another branch; and 6) subjecting Plaintiff to workplace harassment as detailed above.

43.     As a result of such acts, Plaintiff has suffered damages.

## **Prayer for Relief**

Wherefore, Plaintiff prays as follows:

A.     Issue a declaratory judgment that Defendant's practices toward Plaintiff were violative of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 633a;

B.     Enjoin Defendant from discriminating against employees who report discriminatory practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.;

C.     Award Plaintiff damages, including back pay and front pay and all lost benefits, and compensatory damages for emotional distress and hardship created by the Defendant's discrimination and retaliation;

D.     Award payment of all fees, costs, expenses, including attorneys' fees and expert fees; and

E.     Award Plaintiff such other relief as to which she may be deemed entitled.

## **Jury Trial Demand**

Plaintiff demands a jury trial on all counts so triable.

Respectfully submitted,

_____/s/_____
David A. Branch #438764
Law Office of David A. Branch &
Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com